**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| THOMAS NICHOLS and } <br> CAROLYN NICHOLS, } <br> *Plaintiffs* } <br> v. } <br> } <br> ALLSTATE TEXAS LLOYDS, } <br> ALLSTATE INSURANCE COMPANY and } <br> JOHN ALBRITTON, } <br> *Defendants*. | CIVIL ACTION NO. H-04-2242 |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiffs, Thomas and Carolyn Nichols ("the Nicholses" or "Plaintiffs"), complain that Defendants, Allstate Texas Lloyds, Allstate Insurance Company and John Albritton (collectively "Allstate" or "Defendants"), breached their insurance contract by denying the Nicholses' claim for mold damage. The Nicholses also allege Allstate violated the common law duty of good faith and fair dealing, the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA") and the Texas Insurance Code.

Pending before the court are Allstate's motions for summary judgment (Doc. 15) and separate trials (Doc. 25). For the following reasons, the court **ORDERS** that (1) Allstate's motion for summary judgment on Plaintiffs' claims for violation of the duty of good faith and fair dealing, violation of the DTPA and violation of the Texas Insurance is **GRANTED**; (2) Allstate's motion for separate trials of the contractual and extra-contractual claims is **MOOT**; (3) the court reserves opinion on the remainder of Allstate's dispositive arguments; and (4) the case is **STAYED** pending the outcome of *Fiess v. State Farm Lloyds*, 392 F.3d 802 (5th Cir. 2004).

**II. RELEVANT FACTS**

The Nicholses are the owners of a residence in Friendswood, Texas. Their home is insured under the Allstate Texas Homeowners Policy Form B ("the policy"). In July 2001, the Nicholses filed a claim for damage to their roof by tropical storm Allison. After investigating the claim and subtracting the policy's deductible, Allstate issued the Nicholses a check for $519.74. The Nicholses never repaired the roof.

After Tropical Storm Allison, the Nicholses saw a stain on their living room ceiling. During the next year, they observed several other stains and wet spots in different areas of the home. On July 20, 2002, the Nicholses' children reported water damage on the interior Sheetrock of the residence. Mr. Nichols consulted his neighbor, a carpenter, who confirmed it was mold. Mr. Nichols contacted Allstate with his claim on August 12, 2002. Allstate dispatched a claims adjuster in September. The adjuster interviewed Mr. Nichols and inspected the residence, uncovering mold. Allstate ordered an inspection of the plumbing and HVAC system. The plumbing inspection, conducted by U.S. Hydrotech, revealed no active leaks. The HVAC inspection, conducted by Airtronics Inc., revealed problems with the unit. On October 15, 2002, Allstate denied the claim.

In its denial letter, Allstate informs the Nicholses that the mold was caused by the leaking roof and the HVAC. It denies coverage for the mold caused by the leaking roof because the Nicholses failed to give Allstate prompt notice of the claim or make necessary repairs to the roof. *See* Denial Letter, Doc. 15, Ex. G. The letter goes on to say that any mold caused by the HVAC unit is not a covered because of deficiencies with the HVAC unit inconsistent with coverage. *Id.*

When their claim was denied, the Nicholses retained legal counsel. Plaintiffs' expert, P.E. Services, was called in to determine the cause of the mold. It determined the mold was caused *exclusively* by A/C pan overflows and plumbing leaks. *See*, P.E. Services Report, Doc. 21, Ex. 5. This finding conflicts with Allstate's experts' opinion on the origin of the mold. *See*, IEC Supplemental Report, Doc. 15, Ex. N (stating, "deficiencies associated with roof and roof vent pipe

penetrations cannot be eliminated as contributing factors to water damage and fungal growth at this residence."); Cheyenne Roofing Report, Doc. 15 Ex. O (stating, "In my opinion, the damage in this wall, the bath downstairs and the utility area in the garage was caused by this roof vent flashing leak and/or the lack of repair to same.").

On May 6, 2004, the Nicholses filed suit in state court. On June 10, 2004, Allstate removed the case to this court.

### III.  LAW

#### A. Summary Judgment

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987).  The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Anderson*, 477 U.S. at 256-57.  He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254.  A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574. 587-88 (1986), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson*, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*, 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

**B. Policy Interpretation**

General rules of construction govern the interpretation of an insurance policy. *Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2D 873, 879 (Tex. 1999). The burden is on the insurer to prove the applicability of exclusions under its policy. *Id.* Ambiguous terms should be interpreted in favor of the insured. *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 741 (Tex. 1998).

**C. Insurers Duty of Good Faith and Fair dealing, DTPA and Texas Insurance Code Article 21.21**

Under Texas law, insurers are under a duty to deal fairly and in good faith with an insured in the processing of claims. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). When a claim is denied, a claim for breach of the duty of good faith and fair dealing exists only where the insurer had no reasonable basis for the denial. *Id.* Notwithstanding this rule, insurers retain the right to deny questionable claims without subjecting themselves to liability for an erroneous denial. *St. Paul Lloyd's Ins. v. Fong Chun Huang*, 808 S.W.2d 524, 526 (Tex. App. 1991) (writ denied). To recover the insured must, besides showing that the claim was denied, prove the insurer "knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997).

Texas Insurance Code Article 21.21 § 16 allows an individual who has been the victim of "unfair methods of competition or unfair or deceptive acts or practices in the business of insurance" to file a claim against the "person or persons engaging in such acts or practices." Furthermore, a violation of Article 21.21 is a violation of the DTPA. *See Thrash v. State Farm Fire & Cas. Co.*, 992 F.2d 1354 (5th Cir. 1993). Both of these statutory violations require a showing of the same elements as a breach of the duty of good faith and fair dealing. *See Giles*, 950 S.W.2d at 55 (finding that the reasonableness requirements of good faith apply in the statutory context as well). "When an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the

bad faith claim, there can be no liability on either of the statutory claims. *Fiess v. State Farm Lloyds*, H-02-1912, 2003 U.S. Dist. LEXIS 10962 (S.D. Texas June 3, 2003).

## IV. APPLICATION OF LAW TO THE FACTS

### A. Coverage Under the Policy

The policy at issue divides coverage into Coverage A (Dwelling) and Coverage B (Personal Property). Doc. 15, Ex. A at 6. Coverage A provides as follows: "We insure against all risks of physical loss to the property described in Section I Property Coverage, Coverage A (Dwelling) unless the loss is excluded in Section I Exclusions." *Id.* Exclusion 1.f provides:

> f. We do not cover loss caused by:
> - (1) wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself.
> - (2) rust, rot, mold or other fungi.
> - (3) dampness of atmosphere, extremes of temperature.
> - (4) contamination.
> - (5) rats, mice, termites, moths or other insects.
>
> We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breakage of glass which is part of the building if the loss would otherwise be covered under this policy.

*Id.* at 7. Coverage B (Personal Property) provides in relevant part as follows:

> We insure against physical loss to the property described in Section I Property Coverage, Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.
>
> 9. Accidental Discharge, Leakage or Overflow of Water or Steam from within a plumbing, heating or air conditioning system or household appliance. A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.
>
> Exclusions 1.a through 1.h under Section I Exclusions do not apply to loss caused by this peril.

There is a heated debate in the courts over whether Coverage A (Dwelling) covers mold under the ensuing loss provision of Exclusion 1.f. The issue has been presented to the Fifth

Circuit, which certified the question to the Texas Supreme Court. *See Fiess v. State Farm Lloyds*, 392 F.3 802 (5th Cir. 2004). The Texas Supreme Court has yet to render its decision. This uncertainty about the policy's construction compels this court to reserve decision on Defendants' motion for summary judgment to the extent coverage may exist under the ensuing loss provision.

To avoid this outcome, Plaintiffs invite the court to find coverage for mold under enumerated peril 9 of Coverage B. The Nicholses point to the Texas Supreme Court's decision in *Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, as supporting their argument. In *Balandran,* the Court found that the policy covered damage to a dwelling's foundation caused by plumbing leakage despite exclusion 1.h – excluding coverage for "settling, cracking, bulging, shrinkage, or expansion of foundations" – because of the exclusion repeal provision in enumerated peril 9 of Coverage B. *Id.* at 740. In this case, the court finds that the same reasoning does not apply to mold and adopts Judge Cranes's reasoning in *Salinas v. Allstate Texas Lloyds*, 278 F. Supp. 2d 820, 823-25, as its own. *See Salinas* at 823-824 (finding no mold coverage under *Balandran*).

### B. Plaintiff's Extra-Contractual Claims

Mold coverage under the policy is an area of conflict in the courts. When Allstate denied the Nicholses' claim the law was no clearer than it is today. In light of the question currently pending before the Texas Supreme Court in *Fiess,* this court finds that a bona fide disagreement existed about the construction of the policy. This good faith basis relieves Allstate of any extra-contractual liability for its denial of Plaintiffs' claim.

### V. CONCLUSION

For the aforementioned reasons, the court **ORDERS** that (1) Allstate's motion for summary judgment on Plaintiffs' claims for violation of the duty of good faith and fair dealing, violation of the DTPA and violation of the Texas Insurance is **GRANTED**; (2) Allstate's motion for separate trials is **MOOT**; (3) opinion will be reserved on the remainder of Allstate's dispositive arguments; and (4) the case is **STAYED** pending the outcome of *Fiess v. State Farm Lloyds*, 392

F.3d 802 (5th Cir. 2004). Counsel will inform the court of the Texas Supreme Court's ruling within 60 days of its issuance.

    **SIGNED** at Houston, Texas, this 14th day of October, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE